# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LARRY BASEMORE, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) )  Case No. 16-CV-562-SMY-RJD |
| KENT E. BROOKMAN, MICHAEL M. KEYS, and KIMBERLY BUTLER, | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Larry Basemore, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983, alleging that his constitutional right to due process was violated while he was incarcerated at Menard Correctional Center ("Menard"). Specifically, Basemore alleges that he was placed in disciplinary segregation for approximately nine months following an unfair disciplinary proceeding and the issuance of an invalid disciplinary ticket. Plaintiff is proceeding on a Fourteenth Amendment due process claim against Defendants Kent Brookman, Michael Keys, and Kimberly Butler.

This matter is now before the Court on Defendants' Motion for Summary Judgment (Doc. 33). Plaintiff filed a timely Response (Doc. 38). For the following reasons, Defendants' Motion is **DENIED**.

# Background[1]

Plaintiff's claims stem from a fight that occurred on the yard at Menard on March 2, 2015 (Deposition of Larry Basemore, Doc. 34-1, p. 3). Thirty to forty inmates were involved in the fight, however, Basemore was not one of them (*Id.* at 3-4). He was on the basketball court at the time the fight occurred (*Id.* at 3). When a correctional officer fired warning shots, Basemore quickly went to the ground and hit his head on the concrete, causing his eye to swell (*Id.* at 6). The inmates who were on the yard at the time of the fight, including Basemore, were handcuffed and taken to the chapel to be interviewed (*Id.* at 3). Due to time constraints, Basemore's interview had to be completed the following morning (*Id.* at 4-5).

During his interview, Basemore explained that he was on the basketball court when the fight occurred and had no knowledge about what happened or who was involved (*Id.* at 5). Basemore was recalled soon after his first interview (*Id.*). He was told that officers "got word" that he knew what was going on and he was placed under investigation (*Id.*). Basemore was issued a disciplinary ticket on March 28, 2015,[2] charging him with "Dangerous Disturbances," "Impeding an Investigation," and "Fighting" (*Id.* at 6-7; *see* Doc. 34-2, March 28, 2015 Offender Disciplinary Report).

A disciplinary hearing was held on April 1, 2015 (Doc. 34-1 at 7; *see* Doc. 34-3, Adjustment Committee Final Summary Report), and was conducted by Defendants Brookman and Keys (Doc. 34-1 at 8; *see* Doc. 34-3). Basemore testified at the hearing, but did not call or attempt to call any witnesses on his own behalf (*Id.*). He requested that Brookman and Keys review the video footage from the fight, but his request was denied (Doc. 34-1 at 8). The only other evidence presented was the disciplinary report (*Id.* at 8).

---

[1] In reviewing the record, the Court views and recites the facts in the light most favorable to Plaintiff Larry Basemore. *Anderson v. Donhaoe*, 699 F.3d 989, 994 (7th Cir. 2012).

[2] Basemore testified that he received the ticket on March 28, 2015; however, the ticket indicates it was served on March 29, 2015 (*see* Doc. 34-2). Although the discrepancy is noted, it is not dispositive of any issue before the Court.

Basemore was found guilty of Dangerous Disturbances and Fighting, and was sentenced to one year of segregation, one year on C-grade, one year of commissary restriction, and a reduction of one year good conduct credit (*Id.* at 9; *see* Doc. 34-3). The Adjustment Committee indicated that its decision was based on the disciplinary report, which was transcribed verbatim in the decision (*Id.*). Per the disciplinary report, the Committee found that Basemore was not at the basketball courts as he claimed and that he was not cooperative or forthcoming during his interview (*Id.*). A designee of Warden Kimberly Butler signed off on the Committee's decision on April 2, 2015 (*Id.*).

Basemore was in segregation at Menard from March 2015 to August 2015 (Doc. 34-1 at 9). He was then transferred to the segregation unit at Pontiac Correctional Center ("Pontiac") from August 2015 to December 2015 (*Id.*). His disciplinary ticket and associated disciplinary actions were expunged by the Administrative Review Board on December 22, 2015 due to the institution's failure to adhere to Department Rules 504.30 and 504.80 (*see* Doc. 34-3).

## **Discussion**

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477

U.S. at 248). In considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

Inmates are not completely stripped of constitutional protections while they are incarcerated. *See*, *Wolff v. McDonnell*, 418 U.S. 539 (1974). Relevant to this case, they may not be deprived of life, liberty, or property without due process of law. *Id.* at 556 (citations omitted). To prove a due process claim, an inmate plaintiff must establish that: (1) there was a protected interest at stake that necessitated the protections demanded by due process; and (2) the disciplinary hearing process was not in accordance with procedural due process requirements. *See Crane v. Logli*, 992 F.2d 136, 138 (7th Cir. 1993).

Defendants contend that summary judgment is warranted because Basemore had no liberty interest in remaining in general population, and that he was given the required due process for his hearing before the Adjustment Committee. It is well settled that a liberty interest only exists when prison officials restrain the freedom of inmates in a manner that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Thus, an inmate's liberty interest in avoiding segregation is limited. *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009). "In assessing whether disciplinary segregation amounts to a constitutional violation," courts are directed to look to "the combined import of the duration of the segregative confinement *and* the conditions endured." *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013) (quotation omitted) (emphasis in original).

Although relatively short terms of segregation rarely give rise to an inmate's liberty interest, at least in the absence of exceptionally harsh conditions, such an interest *may* arise from a long-term confinement combined with atypical and significant hardships. *See Marion,* 559

F.3d at 697–98 (citing *Wilkinson v. Austin,* 545 U.S. 209, 224, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005); *Sandin,* 515 U.S. at 486, 115 S.Ct. 2293). In *Marion,* the Seventh Circuit found that "six months of segregation is not such an extreme term and, standing alone, would not trigger due process rights." 559 F.3d at 698 (quoting *Whitford v. Boglino,* 63 F.3d 527, 533 (7th Cir.1995)) (internal quotations omitted). However, the Court has not settled on a baseline of what constitutes an extreme term in segregation.

Here, the evidence suggests that Basemore was placed in segregation for approximately nine months. While at Menard for the first four months, he was unable to go to the yard to get air in the summer heat. Basemore was not provided sheets or cleaning supplies, and there was feces on the walls and floors of his cells (Doc. 34-1 at 9-10).

While in segregation at Pontiac, Basemore was placed in cells that were moldy and infested with insects and mice (*Id.* at 12). Other inmates in segregation would throw urine and feces and bang on the bars (*Id.*). However, these conditions were similar to the conditions in general population at Pontiac (*Id.* at 11-12).

Although the record is not fully developed as to how certain conditions in segregation compared to general population conditions, there is sufficient evidence from which a jury could reasonably conclude that Basemore's nine months in segregation amounted to an "atypical and significant hardship." Accordingly, the Court must consider whether the disciplinary hearing conducted by Defendants Brookman and Keys satisfied procedural due process requirements.

Prison disciplinary hearings satisfy procedural due process requirements where an inmate is provided: (1) written notice of the charge twenty-four hours prior to the hearing; (2) the right to appear in person before an impartial body; (3) the right to call witnesses and to present physical/documentary evidence, but only when doing so will not unduly jeopardize the safety of the institution or its correctional goals; and (4) a written statement of the reasons for the action

taken against the prisoner. *Wolff*, 418 U.S. at 563-69; *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988).

There is no dispute that Basemore was provided sufficient written notice of the charge prior to his hearing and that the hearing was held before an impartial body. Basemore also admits that he was given an opportunity to call witnesses at his hearing, but was unable to do so because he did not know any of the witnesses' names (Doc. 34-1 at 8, 11). The question, therefore, is whether there was sufficient evidence to support the Adjustment Committee's decision finding Basemore guilty of Dangerous Disturbances and Fighting.

Inmates are entitled to "a written statement of the fact finders as to the evidence relied upon and the reasons for the disciplinary action taken." *Wolff*, 418 U.S. at 545. Due process is violated when a written statement as to the evidence relied on and the reason for the disciplinary action is not provided. *Chavis v. Rowe*, 643 F.2d 1281, 1286 (7th Cir. 1981). The statement of reasons for the decision guarantees that being found guilty does not violate the inmate's due process rights by ensuring that guilt is found "by the appropriate quantum of evidence." *Id.* at 1287 (citations omitted).

The nature and extent of the statement required to satisfy the constitutional minimum varies from case to case depending on the severity of the charges, the complexity of the factual circumstances, and the proof offered by both sides. *Culbert v. Young*, 834 F.2d 624, 631 (7th Cir. 1987). A less complicated, relatively simple case may satisfy the written explanation requirement by merely stating the board believed the contents of the conduct report. *Id.* "High discretion is afforded to decisions of prison disciplinary committees for they often must act swiftly and on evidence that would be insufficient in less exigent circumstances." *Estelle v. McGuire*, 502 U.S. 62 (1991); *see also Whitford v. Boglino*, 63 F.3d 527, 537 (7th Cir. 1995)

(quoting *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill*, 472 U.S. 445, 456 (1975)).

The Adjustment Committee report, prepared and signed by Brookman and Keys and approved by Butler, was merely a recitation of the Offender Disciplinary Report prepared by Officer Hof (*see* Doc. 34-3 and Doc. 1 at 10-11). Indeed, the only reason given for the Committee's decision was that it was based on Officer Hof's report. No further details concerning the report, or how it substantiated the charges were given. Although Basemore was found guilty of only two of the charges, there was no explanation provided for that decision. Significantly, Officer Hof's disciplinary ticket made no mention of Basemore being a participant in the fight, aside from the fact that he had a black eye, for which he provided an explanation. The only mention of Basemore in the Adjustment Committee's "Basis for Decision" is as follows:

> During an interview with offender Larry BASEMORE M17380 it was observed he had received a black eye. BASEMORE stated he received his injury from falling on the concrete basketball court after the warning shot was fired. Offender BASEMORE was not on the basketball court immediately following the warning shot, nor would he cooperate and be forthcoming with information during the interview. Due to offender BASEMORE's unwillingness to cooperate with the investigation he is being charged with 110: Impeding an Investigation, 105: Dangerous Disturbance, and 301: Fighting.

Although the report indicates that Basemore was not on the basketball court immediately following the warning shot, there is no indication as to how such a finding was made. Moreover, even if Basemore was not on the basketball court, that fact alone would not substantiate the Committee's conclusion that he was actively involved in the altercation that took place on the yard. Therefore, the evidence presented to and relied on by the Adjustment Committee was insufficient to support its decision. The insufficiency of the evidence was also recognized by the ARB in its dismissal of the ticket and expungement of the disciplinary record, as it found that

"both the Reporting Officer and the Adjustment Committee failed to note by observation and/or direct knowledge of Offender's participation in a fight [*sic*]" (Doc. 1, p. 9). Because Brookman and Keys' disciplinary decision was not based on an appropriate quantum of evidence, a reasonable jury could find that these defendants violated Basemore's right to due process in connection with his April 1, 2015 hearing.

The Court reaches the same conclusion with regard to Defendant Butler. Butler contends that she cannot be constitutionally liable for signing off on discipline recommended by prison disciplinary hearing officers. *Minix v. Canarecci*, 597 F.3d 824, 833-34 (7th Cir. 2010) (liability under § 1983 requires personal involvement). Although this may be true when a review of the report would not evidence any procedural deficiencies, *see Smith v. Butler*, 14-cv-372-JPG, 2014 WL 151550, at *6 (S.D. Ill., Apr. 18, 2014), here, the deficiencies were apparent on the face of the report. Even a cursory review of the Adjustment Committee's decision shows that the punishment meted out was not supported by sufficient evidence. On these facts, whether Butler "condoned or acquiesced" to the unconstitutional actions of her subordinates, Defendants Brookman and Keys, is an issue for the jury's determination.

Finally, Defendants are not entitled to qualified immunity as it was clearly established at the time of the events in question that imposing a punishment of segregation for one year without some evidentiary support implicates an inmate's constitutional rights. Accordingly, the Motion for Summary Judgment filed by Defendants Brookman, Keys, and Butler (Doc. 33) is **DENIED**.

**IT IS SO ORDERED.**

**DATED: March 16, 2018**

s/ Staci M. Yandle  
**STACI M. YANDLE**  
**United States District Judge**